The next case is number 221334, Robert M. Eaton v. Town of Townsend, et al., and number 221335, Robert Eaton v. Cindy King, et al. At this time, Attorney Richard LeClaire, please introduce yourself on the record to begin. Richard LeClaire for the Plaintiff Appellant to Robert Eaton, Your Honors. And if I may reserve two minutes of my time. You may. And please start. Your Honors, the District Court erred when it granted Townsend's summary judgment on Eaton's breach of contract and breach of covenant in good faith to appear dealing claims as there are innumerable disingenuous disputes of material fact upon which the Town had the burden to prove relative to whether BOS, the Board of Selectmen, had just caused to terminate Eaton's employment and whether the BOS terminated his employment in bad faith. And these disputes of material fact preclude summary judgment. It is undisputed that my client had a contract of employment and that contract was for a term. It's also undisputed that my client was terminated before the expiration of that term of his contract. As such, it was the burden of proof on the Town to prove that they had just cause to terminate him. Let me note the opinion below has some issues with the statements or the affidavits. And it ruled that these lack personal knowledge. It's mentioning the state of mind of others. So if we're not necessarily talking about the burden of proof, but for a summary judgment, it must be, you know, it must be evidence admissible in the rules of evidence that creates a general issue of fact. So could you address that? So you're honest. The judge makes that conclusion, but doesn't appoint any particular thing in the affidavit. And the affidavit, I will admit, is very long. And the reason it is very long is because I, as the lawyer, was concerned. There's allegations that my client didn't provide certain information to Town Council. So we itemized each of these instances, times when things were requested, times when were put back. It's a very detailed affidavit. It doesn't get into state of minds of people. It really doesn't do that. And his audit doesn't point that out. The question is, did they have grounds to terminate my client's employment? And his contract specifically states that the board must make findings of fact at the hearing. It says they must do that. And as we set forth in the affidavit and the affidavits of others, most of those grounds for his termination are false. Some of them are patently false. And they're all disputed. And they don't go to state of mind. They go to facts that occur. There's an allegation that my client gave something to a member of the Board of Selectmen. My client states in his affidavit, absolutely, I did not. That has nothing to do with people's state of mind. There are allegations that certain information was given to people. My client or statements that my client said to Town Council. My client says, absolutely, I didn't make those statements. So I know His Honor makes that statement in his ruling. But he doesn't point to any particular instance. And once again, the grounds for his termination must be found in those findings of fact. And as set forth in his affidavit with detail, they're mostly disputed. And most of them are patently false. His Honor granted summary judgment, essentially finding that the fact that my client issued a memorandum to the Board of Selectmen and then issued a press release, that that was grounds to terminate him. Massachusetts courts have consistently held, when the burden of proof is on the defendant to prove that they had just caused the termination and to prove that it was exercised in good faith, they bear that burden as an affirmative defense and it can really be ruled as a matter of law. Counsel, there's no dispute, is there, that your client issued that statement? There is absolutely no dispute. But it's a question of fact, Your Honor, whether that's just cause. And when a jury is to look at this, they'll look at the behavior of all the parties. And there's two things they have to keep in mind. My client was appointed under the Massachusetts strong chief statute, which means he's in charge of the police department. And he's also appointed under the town charter of the town of Townsend, which says the BOS, the Board of Selectmen, doesn't get to interfere with the day-to-day operations of the police department. They are only to control the police department by broad policies decision. And from the beginning, they breached the contract by continually interfering with them. Mr. Clark, one of the members of the Board of Selectmen, his wife had been slighted or disciplined by a prior chief, and that set off a firestorm. And from the beginning, he's pressuring my client to demote certain members of the police department, to not promote others. Ms. Smart, one of the members of the Board of Selectmen, she's accused of telling my client that the police are pinging her, that they're cooperating with the recall movements in town, and they're putting pressure on my client and asking him, inappropriately, to take certain steps with the assignment of employees and other items. They then violate complaints against Lieutenant Giancardi, clearly retaliatory. He was one of the officers that investigated Mr. Clark's wife. This whole thing comes to a head in September with Mr. Clark. Part of their complaint, or their findings, is that they interfered with the town solicitor's investigation of this illegal search. Two points on that, Your Honor. First, I want to know who has the authority to do the investigation. You say that the chief had the authority. The BOS delegated their authority to the town solicitor. So, and this is where I think the judge below erred. There is a statutory provision that Boards of Selectmen can conduct investigations. There's also a town charter, part of the town charter that says they can do it. When there's a vote, there was never a vote. That's just a red herring. There was never a vote for them actually to conduct an investigation. And we know that because this is subject to the open meeting law, and it's subject to the public records. Boards of Selectmen have to keep records of votes. None of them had a recollection of taking a vote to approve a statutory or municipal investigation. There's no record of it. They don't have a record of a vote, but they do have a recollection of directing the town solicitor to handle the investigation. That's incorrect. Town solicitors testified. I never spoke to any members of Boards of Selectmen about it. They never told me that. That's his testimony. That's a disputed fact in this case. But notwithstanding, a jury could find just on the basis of the absence of a vote and the absence of a conclusory report that no vote was ever approved. Furthermore, even if that did occur, there's nothing in that statute that says that the police chief, that the town council has the right to tell the police chief not to conduct his own investigation, which the police chief is obligated to conduct pursuant to state statute and the state CMRs. The police chief had a duty to do it. There's nothing in the law that says if the town votes to conduct an investigation, that they can tell a police chief who is a strong police chief, a statutorily strong police chief, that he cannot do his own investigation, that he was professionally and statutorily required to complete. And I think that that whole part of it is a red herring. Because, one, I think a jury will find it was never voted to conduct the investigation. And secondly, even if they had, they're not able to prevent my client from conducting his own, which he's right to do. My client was interfacing with the Department of Criminal Justice Information Services. They are the state agency. His investigation consisted of speaking to them and providing the information that they requested. So they, the holders of this information, the custodians, could conduct an investigation. And they're complained about that. But when a jury considers, Judge Lindstrom, whether or not that was just cause to terminate my client's employment, they need to look at that whole history. The whole history of them issuing those press releases, which would be. . . Counsel, your time is up, I believe. You've reserved some time. Thank you. Okay. Let's hear, then, from Mr. Notice for the Town of Townsend. Good morning. May it please the Court, Attorney Notice for the Town of Townsend, the individuals, in this case, Kreidler, King, and Smart. I think it's helpful. There's a lot of claims here. But just to keep in context what was really going on here, we had a chief who was off the rails, who was not, who was completely insubordinate to the appointing authority, who, under the contract, had an obligation to act professionally, to follow the town bylaws, policies, and procedures. And he failed in every respect. And I do not think there's a disputed fact, particularly with respect to the February 2017 memorandum that was issued and essentially an edict that he issued to his bosses, the appointing authority, that they needed to comply with this within 48 hours or else he was going to go to the public and disclose something that was highly confidential and totally inappropriate to do for somebody who is the chief law enforcement officer in the town. And not to mention the fact that he had been instructed by town council to keep this confidential. But he made no efforts whatsoever, regardless of the fact of whether town council had the authority to do the investigation. Here we have a chief of police who's completely ignoring and not acting cooperatively with legal counsel for the town in an investigation that he should have been acting cooperatively with them. He didn't cease his personal investigation when he was asked. He didn't engage in any dialogue about that. And let me ask, counsel, when you say personal investigation, there's an issue here, at least looking at Judge Sorokin's opinion, that he was acting in his capacity as chief of police, not as a private citizen. So that doesn't change the result, right? No, I don't think it does. I don't think he should have been conducting this investigation at all. As was said, the town had every right under the town charter. Why? Because this was something that involved his department. It was something that he was a witness to, Your Honor. He was interviewed by CJIS. It was totally inappropriate for him. He knew that the town was doing an investigation. He should have been acting cooperatively with town council, and he failed to do that. You don't dispute that there's no evidence of a vote on that? There isn't. But it was, as Judge Sorokin pointed out in his decision, it was absolutely well known to the chief, Chief Eaton, through various circles, both verbally being told and also through statements that were made in the press, that this investigation was going on by town council. And in response to that, what he did was act completely insubordinately to town council, obstructed the investigation. And I don't think that a vote is necessary under the law to hire a town council to conduct an investigation. It was undisputed that... This is a very strange case. When there are allegations that the town council members are trying to get the chief to demote people or fire people, direct interference with his duties as a police chief, this just goes into the very strange realm that the people who are going to vote on his performance are also doing these kinds of things behind the scene. Well, I think that there's overwhelming evidence, Your Honor, that his conduct in the course of the investigation and blatantly ignoring town council, blatantly not fulfilling his responsibilities as the police chief to uphold the policies and procedures of the department. Do we have to know who has the authority to do what in order to make a determination as to whether people were acting properly or improperly? I mean, suppose the town council gave him a directive that was clearly illegal. Would it be your position that he would have to comply with that directive? I don't think it was illegal. I don't think there's any... I said if... I think that's a red herring. If you want to talk about red herrings and just look at the conduct of this gentleman over the course of six months and what he was doing, he literally engages in an unlawful activity when he demands that the board of selectmen within 48 hours take action and come to a vote, which is completely illegal. And here's the law enforcement... three times now. And you continue to talk about over a six-month period. What besides that one example are you referring to? He was... They hired a neutral chief to come in and help this gentleman, to guide him to act more professionally. He did not cooperate with that gentleman's investigation. And that completely neutral party came out and said that this guy had an axe to grind against the board of selectmen and that he was completely wrong. What investigation? The investigation that the town council was conducting legally. And regardless of whether the court finds that there was some... there wasn't merit to the investigation, here we have the chief law enforcement official of the town not cooperating whatsoever with town council. And that, in and of itself, is egregious conduct. Is it egregious if the town council wasn't authorized to do what it was trying to do? It's our position that he was completely authorized to do what he was, both statutorily by the town charter, and there's simply no evidence that they needed to conduct some sort of vote to engage town council to conduct this investigation. So the investigation that he was ordered to do was completely legal. It's commonly done in municipal law, and there's nothing that's been pointed to to suggest that by not having a vote it was somehow illegal. Okay. Thank you, counsel. Let's hear then from Ms. Maglione. Ms. Maglione. May it please the court, Christine Maglione, appearing on behalf of one of the appellants, Gordon Clark. Eaton asserts two claims against Clark, a procedural due process violation and malicious interference with contract. The court should affirm the district court's grant of summary judgment in favor of Clark on both counts because the overwhelming evidence shows that Eaton's own misconduct led to his termination and that it had nothing to do with any alleged bias or malice on the part of Clark or any other appellee for that matter. Jumping right to the issue of bias, because that seems to be an issue of concern for the court, Eaton contends that he had an acrimonious relationship with Clark due to Eaton's refusals to assist Clark allegedly in retaliating against others on behalf of Clark's wife. With respect to bias, first of all, the First Circuit has held that there is no requirement that the hearing officer be impartial. Indeed, the terminating employer may preside. That's not to say that bias could be so severe that it could interfere with due process. That's true, but to demonstrate such a due process violation, a plaintiff has to show that the alleged bias deprived that individual the opportunity to put his facts before the decision maker or that there was an error in the primary facts underlying the decision of determination that could only be explained by the bias. Mr. Eaton has failed to meet the burden. Even when all reasonable inferences are drawn in Mr. Eaton's favor, the claim of impermissible bias on the part of Clark must fail. That's because Eaton has failed to show how Clark's alleged bias either prevented Eaton from presenting his side of the story or caused an error in the underlying facts supporting the termination. The record is abundantly clear that Eaton's termination was due to his own mishandling of the CJIS inquiry. His refusal to cooperate with the town council's investigation into potential police misconduct and his insubordinate and unprofessional behavior, issuing an ultimatum to the Board of Selectmen, demanding that they issue a press release exonerating the officers involved as well as himself, and releasing a press release in direct contravention of town council's directives. Significantly, and I think this is really important, none of these events involved Mr. Clark, his wife, or any alleged bias. Moreover, the whole issue of the police misconduct came to the attention of the Board of Selectmen, not by any of the Selectmen, not by Mr. Clark, but by Mr. Eaton himself, when he brought information to the chairwoman of the Selectmen claiming that perhaps an employee that had been appointed as an administrative assistant had not been properly vetted. And that suddenly a package appeared mysteriously under his door that had Board of Probation records involved in not only the, well it was a wellness issue with the town employee, but her boyfriend, the Board of Probation records. That raised an issue about whether or not appropriate police conduct was going on. And when the chairwoman of the Board of Selectmen called town council, who works outside of the Board of Selectmen with an outside law firm, and asked, inquired, whether or not there was an issue that, whether or not police should be conducting criminal investigation reports of potential town employees and other citizens. And town council, rightfully so, said, well that's concerning. The town could be exposed to potential liability for that. We should investigate. And that was the impetus for the investigation. It wasn't any impermissible bias. It had nothing to do with any bias. All of those facets existed prior to that, and they existed prior to that event. It was not because of any bias that this occurred. And my time is up. Any further questions? Okay, so let's, two minutes for rebuttal. Your Honor, to suggest my client was off the rails is disingenuous. Please identify yourself again for the record. Richard LeClair for the plaintiff appellant. To suggest my client was off the rails is disingenuous. He, as the police chief, was in control of the police department, pursuant to the town charter. He was conducting an investigation by providing information to the Department of Criminal Justice Information Services, the people in charge of enforcing this statute. He is under no obligation to take direction from the town council. He's not under obligation to the town charter or the Mass. Strong Chief Statute to take direction from the Board of Selectmen. He is an independent chief when he, they also say that he released the report from CJIS, and that's highly confidential. That's completely specious. It's a public record. It's a public record they wanted buried. And there is no vote. And the fact that there's no vote is significant because in Massachusetts, we have an open meeting law. Deliberative boards, municipal boards can't act in private unless it's within an exception, and they need to keep a record of everything they do and discuss. And there's absolutely no mention of that. And so, oh, I don't think they need a vote. I ask you to read the two statutes, the statute and the regulation under the town charter that gives them the ability to conduct investigations. Of course there needs to be a vote. That's how the Board of Selectmen operates. The fact that people are talking about it doesn't mean it was properly authorized, and they didn't. And to do it, you have to issue a final report. Council, so a town is faced with a situation in which they may, because of the actions of the police chief, be exposed to numerous lawsuits for violation of their civil rights as a result of actions taken by the police chief. The town then asks town council, is this a matter of concern? And he says, yes, but we need more facts to know how much of a concern it is. Normally when people, institutions ask their outside council to investigate, that is a matter covered by attorney-client privilege and does not require any vote, it just naturally follows from the prospect of liability. So I'm having trouble seeing why what the town did was unreasonable here.  None of the Board of Selectmen ever did that. And none of the Board of Selectmen ever spoke to the town council to suggest that he do that. Secondly, in those circumstances, what the Board of Selectmen should have done was voted to go into an executive session and then voted to conduct these investigations. I understand. Do you have anything else to say? Yes, if I just could, my client's actions in issuing that press release, you need to consider them. That when in December, before this investigation was completed, the Board of Selectmen directed Jim Cridler to call three police officers in and threaten them all with criminal prosecution. Before the investigation was even completed by CJIS. Threaten them with either take discipline or termination or I'm going to have you criminally prosecuted. He threatened my client with criminal prosecution. The other word for that is blackmail. It's extortion. And my client in issuing the press release and issuing the memorandum is clearly reasonable. One last item, my client was entitled to an impartial board at his hearing because he did not have any post-termination relief. Loudermill is clear on that. The other circuits have specifically addressed this. You're entitled to an impartial unbiased decision-maker prior to your termination where he did not have a post-termination hearing. That unbiased person needed to be unbiased, fact-fined, and needed to be provided at his pre-termination hearing. It wasn't, and that's it. Okay. Thank you very much, counsel.